BALTIMORE AND OHIO SOUTHWESTERN RAILWAY
COMPANY v. SPAULDING.

[No. 2,645.   Filed December 23, 1898.]

MASTER AND SERVANT.—*Place Where Servant is Required to Go Must
be Kept in Safe Condition.*—Where an employe is required in the
line of his duty and employment to go to a bin from time to time to
get scrap iron to be used in and about the forges of a blacksmith
shop, it is the duty of the employer to keep the bin in a reasonably
safe condition so as to protect the employe from injury. *pp. 326-328.*

SAME.—*Safe Place to Work.*—An employe has a right to assume that
a place where he is required to go from time to time in the line of
his employment is kept in a reasonably safe condition.   *p. 327.*

SAME.—*Safe Place to Work.— Inspection by Master.*—It is the duty
of the employer to use due diligence in providing a safe place for
an employe to work, even though it requires an inspection by some
duly authorized officer for that purpose.   *p. 328.*

APPEAL AND ERROR.—*Conflicting Evidence.*—The Appellate Court will
not weigh conflicting evidence.   *p. 329.*

SAME.—*Instructions.*—A general objection to instructions as a whole
will not be considered on appeal, where no particular defects are
pointed out.   *p. 329.*

SAME.—*Instructions All Construed Together.*—A cause will not be
reversed by this court because one instruction is not technically
correct, where the instructions taken as a whole state the law cor-
rectly.   *p. 330.*

INSTRUCTION.—*Master and Servant.—Proximate Cause.*—An instruc-
tion that "a railroad company is not an insurer of the lives and
limbs of its servants, and it cannot be held liable for an injury sus-
tained by its servants, unless it was guilty of some act of negligence
which resulted in the injury, and which was not contributed to by
the carelessness and negligence of the servant himself," correctly
expresses the law, though it does not in terms refer to the doctrine
of proximate and remote cause.   *p. 331.*

SAME.—*Master and Servant.—Hazardous Employment.*—An instruc-
tion that "it is the duty of one engaged in a hazardous employment

to keep a constant lookout for danger that besets him, and to which he is exposed, of which he had equal advantages and opportunities with the master to know, and fully understand, he cannot recover for an injury as a result of such danger," is not rendered prejudicial to the master by the expression "and fully understand," since the expression placed upon the servant an additional burden. *p. 331.*

SAME.—*Verdict.*—*When Court May Direct.*—The court is only authorized to direct a verdict for defendant where there is no evidence to support plaintiff's cause of action. *p. 333.*

Appeal from the Daviess Circuit Court· *Affirmed.*

*W. R. Gardiner, C. G. Gardiner* and *E. W. Strong,* for appellant.

*Padgett & Padgett,* for appellee.

WILEY, J.—Appellee sued appellant to recover damages for injuries received while in the service of appellant as an employe. The complaint upon which the case was tried was in two paragraphs, and a brief statement of its allegations will suffice. In the first paragraph it is averred that appellant maintained and operated machine shops in the city of Washington, Daviess county, Indiana, connected with which was a blacksmith shop, wherein a large number of blacksmiths and their helpers are employed; that appellee was helper of one of the blacksmiths employed therein; that near said blacksmith shop appellant kept and maintained a scrap bin, in which scrap iron was thrown and kept; that some sheet iron had been put in said scrap bin, with one end leaning against the wall; that it was a part of the duty of appellee to, and his employment frequently called him to go to said scrap bin for pieces of iron to be used by the blacksmith, whose helper appellee was; that when the doors of said shop building were left open, as they frequently were in the warm weather to let the air circulate through the building, if the wind was strong, it would blow the fire and

smoke from the forge upon the blacksmith, and that upon such occasions it was the duty of appellee to go to said scrap bin and procure a piece of sheet iron and set it up in front of the forge to protect the blacksmith from fire and smoke, all of which was known to appellant; that said scrap bin was constructed with walls on each side, with one end closed and the other open, where the employes were to enter in the discharge of their duties, and that it was about twelve feet wide; that long prior to the time appellee was injured, appellant had caused to be carried into said bin large and heavy pieces of sheet iron, and had carelessly and negligently placed said pieces of iron on end, and set the same against one of the sides of said building in almost a perpendicular position, and in such a negligent and careless manner that same was liable to topple over and fall on persons entering said scrap bin; "that said pieces of sheet iron had been in said dangerous and unsafe condition for a long period of time, to wit, for the period of three days or more, and defendant knew or might have known of the unsafe condition of said scrap bin occasioned thereby, by the use of due diligence; that plaintiff had no knowledge  *  *  *  of the unsafe and dangerous condition of said scrap bin; that  *  *  * while in the discharge of his duty under his employment,  *  *  *  he entered said scrap bin to get a piece of sheet iron to set up against said forge to protect said blacksmith from the heat and smoke which was blowing against and upon him,  *  *  *  and while exercising due care and diligence, and without any fault or negligence upon his part," and while so engaged, said pieces of sheet iron which were standing against the wall toppled over and fell upon him, etc.

The second paragraph of the complaint is like the first, except that in the second it is alleged that the

pieces of sheet iron that fell upon and injured appellee were standing on the floor, on one edge, with one edge leaning against the wall; that some of the pieces nearer the wall were crooked and uneven, while those on the outside were straight, and that he was thereby deceived as to their actual condition. A demurrer was overruled to each paragraph of the complaint for want of sufficient facts, and an exception reserved. The case was put at issue by general denial, tried by a jury, resulting in a general verdict for appellee. Appellant's motion for a new trial was overruled, and it has assigned errors, challenging the overruling of the demurrer to the complaint, and overruling its motion for a new trial.

As to the first paragraph of the complaint, appellant urges that there is no averment that the scrap bin was a place provided by the master for its servants to work in, or that scrap iron was placed therein in any particular manner. We do not think this position is tenable in the light of the averments. It is charged that the bin was kept and maintained by appellant for the purpose of storing scrap iron; that it was the duty of the employes to go to said bin from time to time to get scrap iron to use in and about the forges in the blacksmith shop; that this was one of the duties of appellee in the course of his employment; that on the occasion of his injury he went into said bin for the specific purpose of getting a piece of scrap iron to put up at the forge to protect the blacksmith, for whom he was helper; that appellant knew that that was a part of his duty, and while thus engaged was injured. It is true, as appellant suggests, the complaint does not aver that scraps were placed in such bin in any particular manner, but we do not think such averment was necessary. The term "scrap bin" as used in the complaint, implies the character

Baltimore, etc., R. Co. *v.* Spaulding.

of the place, and denotes that it is a place where old
and scrap iron is stored promiscuously. The fact that
it was a place where appellant's servants were re-
quired, in the line of their duty and employment, to go
in discharge of their obligations to their master, brings
it within the unvarying rule that the master must
provide an ordinarily safe place in which the servant
is required to work. That the master must do this
is so thoroughly established by the authorities that
it is no longer a debatable question, and a citation
of the cases so holding would be a waste of time. In
the case before us, if it was the duty of appellee
within the scope of his employment to go to the
scrap bin,—and the demurrer admits this,—then it
was the duty of appellant to keep it in a reasonably
safe condition, so as to protect the servant from in-
jury, except such as was incident to the character of
his employment, and which the law says he must as-
sume. We are not unmindful of the rule that a serv-
ant cannot subject himself to known and apparent
danger, and yet hold the master responsible for result-
ing injury; but that question is not here presented. The
appellee had the right to assume that the scrap bin
was in a reasonably safe condition when he entered it
to perform his service for his employer, and it was
not an obligation resting upon him to make a minute
and careful inspection and examination before per-
forming the service that called him there. He was
only required to exercise ordinary care and caution,
and when he had done this, and he was not in the
presence of apparent or known danger, he had a right
to presume that he could perform the service in safe-
ty. It seems to us that the complaint shows he did
this. As the scrap bin was a place where appellee
was required to go to discharge his duty to appellant.
it was the duty of appellant, as we have seen, to keep

it in a reasonably safe condition. It is averred that appellant knew or might have known of the unsafe condition of the scrap bin by the use of due diligence. As to what is "due diligence" depends largely upon the facts in each particular case, and under the facts stated in the complaint, it appearing that appellant's servants were required to go to this scrap bin to perform their duties to it, it was the duty of appellant, in the exercise of "due diligence," to keep it in a safe condition, even if it required an inspection by some duly authorized officer for that purpose. *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156; *Louisville, etc., R. Co.* v. *Corps,* 124 Ind. 427; *Lake Shore, etc., R. Co.* v. *Stupak,* 123 Ind. 210; *Taylor* v. *Evansville, etc., R. Co.,* 121 Ind. 124. So, under the facts charged, we must hold that appellant was chargeable with the knowledge of the unsafe condition of the bin, and the specific objection to the first paragraph of complaint is not well grounded. Elliott on Railroads, section 1307, and authorities there cited.

We cannot conceive it to have been the duty of the appellee, under the facts charged, to have examined with care the sheet iron that fell upon and injured him. It was not his duty to take hold of it and move it to see if it would fall upon him. He saw it leaning against the wall of the bin, and assuming, as he had a right to assume, that it was safe, he relied upon his apparent safety from danger, and went about the discharge of his duties. It seems to us that he used ordinary care under the circumstances. Appellant has not cited us to any authorities in support of its insistence that the complaint is insufficient, and we have been unable to find any so holding. The second paragraph of complaint is so nearly identical to the first, that what we have said applies to both. The

complaint is sufficient, and the court did not err in overruling the demurrer.

Appellant's motion for a new trial was grounded on three reasons: (1) That the verdict is not sustained by sufficient evidence; (2) that the verdict is contrary to law; (3) that the court erred in giving certain instructions, on its own motion, and in refusing to give certain instructions tendered by appellant. Appellant has failed to discuss the second reason assigned in its motion for a new trial, and hence under the rule it is waived. The other two we will dispose of in their order:

(1) That the verdict is not sustained by sufficient evidence. Appellant insists that the verdict and judgment cannot stand, because the evidence does not sustain them. The evidence is somewhat voluminous, and it would not serve any good purpose to refer to it, even in the abstract, yet after a careful examination of it, we find that there is an abundance of evidence to support every material averment of the complaint. True, there is some conflict of the evidence, but in such case the appellate tribunal can not weigh it. It is only when there is no evidence to sustain the verdict of a jury, that the court of last resort can disturb it, because it is not sustained by the evidence. There being evidence in the record from which the jury might reach the conclusion as expressed by their verdict, it must stand. *Currie, etc., Co.* v. *Byfield*, 9 Ind. App. 180; *Town of Ladoga* v. *Linn*, 9 Ind. App 15; *Coryell* v. *State*, 130 Ind. 51.

(2) The instructions. The appellant first makes a general attack on the instructions given by the court, because they proceed, as appellant insists, upon the theory that it was the duty of appellant to keep its scrap bin in a safe condition, and as to this counsel say: "While some of them [the instructions] fall far

short of stating the law, even upon that theory, fully and correctly, yet we are not disposed to split hairs in attempting to point out distinctions that probably had nothing to do with the action of the jury." Such a general objection to instructions as a whole is not sufficient. It is not the duty of this court to take up the instructions given, and examine them as a whole, where the complaining party has failed to point out the particular instruction, or instructions, charged to be erroneous. Appellant has, however, called to our attention some of the instructions by number and reference to the transcript, which it is our duty to examine, to which we will now direct our attention.

The fourth instruction, it is urged, is erroneous, because in it the court submitted the case to the jury on both paragraphs of the complaint, and that as the first paragraph is defective, such instruction was fatal. This probably might be true if the first paragraph was bad; but as we have held that it stated a cause of action, the objection is unavailing. This instruction is also criticised because in it the court instructed the jury that they might find for the appellee, "if he prove to your satisfaction the material averments of either paragraph of his complaint" (quoting the language of the court). Counsel urge that as the court, in this instruction, did not tell the jury that appellee must prove every material averment of his complaint by a preponderance of the evidence, it was erroneous. This instruction, standing alone, might not be a technically correct statement of the law, as it told the jury that it would be sufficient if appellee had proved the material facts to their "satisfaction," yet, when we come to consider all the instructions, and construe them together, appellant's objection is obviated, for in other instruc-

tions the court specifically told the jury that before plaintiff could recover, it was incumbent upon him to establish the material averments of his complaint by a fair preponderance of the evidence.     Instructions should be construed as a whole, and not in detached portions.     *Clanin* v. *Fagan*, 124 Ind. 304; *Conway* v. *Vizzard*, 122 Ind. 266; *Todd* v. *Danner*, 17 Ind. App. 368.

The eighth instruction is as follows: "A railroad company is not an insurer of the lives and limbs of its servants, and it cannot be held liable for an injury sustained by its servants, unless it was guilty of some act of negligence which resulted in the injury, and which was not contributed to by the carelessness or negligence of the servant himself." Appellant insists that this instruction was erroneous, because it wholly disregarded the question as to whether appellant's negligence was the proximate or remote cause of the injury.     The instruction is not subject to the objection urged.     It stated the law clearly and plainly, and we do not know how it could be more forcibly and explicitly expressed.

The tenth instruction reads as follows: "It is the duty of a railroad company not only to provide, but maintain, reasonably safe places for its servants to work in; and it cannot delegate this duty to another, and thereby relieve itself from responsibility.     And a servant engaged in the service of a railroad company has a right to rely upon the company to furnish him with a reasonably safe place in which to work, and it is the duty of the company to maintain such place in a reasonably safe condition while the service continues." Appellant says this instruction is erroneous, because it is not applicable to the facts alleged and proved.     We cannot so regard it.     It states the law in strict harmony with what we have said in the for-

mer part of this opinion in regard to the duty of a master to provide and maintain a safe place or safe premises in which his servants are required to work.

Instruction twelve is: "It is the duty of one engaged in a hazardous employment to keep a constant lookout for the danger that besets him, and if he receive an injury because of a danger to which he is exposed, of which he had equal advantages and opportunities with the master to know, and fully understand, he cannot recover for an injury as a result of such danger." Appellant's learned counsel insist that this instruction is vitiated and rendered bad by the expression "and fully understand." The instruction, in our judgment, states the law most advantageously to the appellant. The objection at most, is highly technical. It would have been good with these words omitted, and the appellant could not have been prejudiced by them, because it placed upon appellee an additional burden, and for this appellant cannot complain.

The appellant, at the proper time, tendered to the court a series of instructions, numbered from one to fourteen, and requested that they be given to the jury. The court gave instructions one, three, four, seven, eight, nine, and twelve, and refused to give instructions two, five, six, ten, eleven, thirteen, and fourteen. After a careful examination of these instructions which the court refused, and comparing them with the instructions the court gave, we are clearly of the opinion that those tendered by the appellant which correctly stated the law were fully covered by other instructions given, and in such case refusing to give the instructions asked is not error.

The fourteenth instruction requested by appellant was a plain direction to find for appellant. The court correctly refused this instruction, because to have given it, under the evidence, would have been an invasion of

the rights of the jury. The court is only authorized to direct a verdict for defendant where there is no evidence to support the plaintiff's cause of action. See *Gregory* v. *Cleveland, etc., R. Co.,* 112 Ind. 385; *Wolfe* v. *McMillan,* 117 Ind. 587; *Hanna* v. *Terre Haute, etc., R. Co.,* 119 Ind. 316; *Staser* v. *Hogan,* 120 Ind. 207; *Moore* v. *Baker,* 4 Ind. App. 115; *Adams* v. *Kennedy,* 90 Ind. 318; *Pennsylvania Co.* v. *McCormack,* 131 Ind. 250. After a careful consideration of the evidence and the instructions, and looking at the entire record, we cannot say that there is any error for which the judgment should be reversed. Judgment affirmed.